# *United States District Court*

**FILED**

_____**MIDDLE**_____ DISTRICT OF _____**ALABAMA** AUG 1 1 2006

**CLERK**
**U. S. DISTRICT COURT**
**MIDDLE DIST. OF ALA.**

### In the matter of the Search of

(Name, address or brief description of
person, property or premises to be
searched)

CASE NUMBER: *3:06mj 80-SRW*

930 13th Avenue
Phenix City, AL 36867

## Motion to File Search Warrant and Return of Inventory

The United States moves to have the previously authorized search warrant for

residence at 930 13th Avenue, Phenix City, Alabama 36867 and its corresponding return

of inventory filed in the Clerk's Office. Currently, the Clerk's Office will not accept the

search warrant and return of inventory because the Clerk's Office does not have the

District's standard application form for this warrant. Upon reviewing its records and

speaking with the persons involved with this matter, the United States has concluded

either that (1) the case agents have misplaced the application form, or (2) the application

form was not included among the materials presented to the Magistrate Judge upon her

issuance of the warrant.

Regardless of the cause, the missing form, however, does not invalidate the

properly issued warrant. The search warrant complied with the legal and constitutional

requirements under Fed. R. Crim. P. 41 and the Fourth Amendment for the issuance of a

search warrant -- it was presented to and signed by an authorized Magistrate Judge, who

reviewed an attached sworn affidavit, description of the property to be searched, and a list

of proposed property to be seized.   Moreover, case law uniformly dictates that an error

such as this -- whether because the form was lost or never initially presented to the Court

-- does not invalidate the warrant.  The Court should direct the Clerk's Office to accept

the search warrant for filing.

A memorandum of law in support of this request is attached.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: christopher.a.snyder@usdoj.gov

# MEMORANDUM OF LAW

## Background

On the afternoon of Friday, June 9, 2006, the United States Attorney's Office for the Middle District of Alabama received a telephone call from Assistant United States Attorney Samantha Spangler from the United States Attorney's Office for the Eastern District of California.[1]  Spangler requested assistance with a search warrant application for a residence in the Middle District in connection with an ongoing investigation in California.[2]  Spangler spoke with the duty attorney, Christopher Snyder, and detailed the particulars of the investigation.[3]  She additionally noted that Air Force OSI Special Agent Mario Price would be arriving in Montgomery, Alabama, the following Monday to assist with the search warrant application.[4]

Snyder met with Price and another Special Agent from Maxwell Air Force Base, Gianna Carter, on the morning of June 12, 2006.[5]  Snyder and the agents reviewed a series of documents that Price had prepared,[6] including his affidavit,[7] a photo and description of the property to be searched,[8] and an inventory of items to be seized at the

---

[1] Snyder Decl. at ¶2 (Attachment 2).

[2] *Id.* at ¶2.

[3] *Id.*

[4] *Id.* at ¶3.

[5] *Id.* at ¶4.

[6] *Id.* at ¶4.

[7] Attached as Exhibit A to Attachment 1.

[8] Attached as Exhibit B to Attachment 1.

property.[9] Snyder prepared and printed out an application form for a search warrant and a search warrant form.[10] He then called the duty Magistrate Judge, Judge Deloris Boyd, to schedule a time to have her consider the search warrant application and afterwards faxed ten pages of materials to her chambers.[11] Shortly thereafter, however, he was informed that Judge Boyd would be in court for the morning, but that Judge Susan Russ Walker had agreed to review the application.[12]

Snyder, Price, and Carter then met with Judge Walker who reviewed, at a minimum, the search warrant, which had attached Price's affidavit, a photo and description of the property to be searched, and an inventory of items to be seized at the property.[13] After reviewing the documents and swearing Price to the contents of the affidavit, Judge Walker and Price signed the documents.[14] The search warrant authorized Price and any Authorized Officer of the United States to search 930 13th Avenue, Phenix City, Alabama 36867, on or before June 22, 2006 between 6:00 A.M. and 10:00 P.M.[15]

After leaving the Judge's chambers, Price later executed the search warrant, leaving a copy of the warrant for the occupant of the residence.[16] He then prepared a

---

[9] Attached as Exhibit C to Attachment 1.

[10] Snyder Decl. at ¶5.

[11] *Id.*

[12] *Id.*

[13] *Id.* at ¶6.

[14] *Id.* at ¶6; Price Decl. at ¶5(Attachment 3); Carter Decl. at 4 (Attachment 4).

[15] *See* Exhibit B & C to Attachment 1.

[16] Price Decl. at ¶6.

return of inventory form containing the contents of the search, which he provided to Carter, along with the other materials he had from the search.[17]  Carter took the return of inventory form to Judge Walker to sign it.[18]  Carter then attempted to file the materials that Price had given her along with the signed return of inventory form to the Clerk's Office.[19]  She was informed, however, that the Clerk's Office would not accept the search warrant because Carter did not have the application form for the search warrant.[20]  Neither Price, nor Carter, however, remember seeing this form, nor do they recall misplacing any files.[21]  Snyder has reviewed his files and, while he does not have an exact copy of the signed materials, which he gave to the agents, he does possess a rough draft of the application form he prepared.[22]

Logically then, there are two possible conclusions for the whereabouts of the application form.  Either the case agents somehow misplaced the form, or the form was not included among the materials presented to the Magistrate Judge upon the issuance of the warrant.  Neither of these possible explanations, however, is grounds for the Clerk's Office not to accept the warrant and inventory for filing.  If the application form was misplaced, case law uniformly dictates that this type of administrative error does not invalidate the warrant.  Additionally, if the application form was never presented to the

---

[17] *Id.* at ¶7; Carter Decl. at ¶5.

[18] Carter Decl. at ¶5.

[19] *Id.* at ¶6.

[20] *Id.*

[21] Price Decl. at ¶¶7-8; Carter Decl. at ¶¶5-6 .

[22] Snyder Decl. at ¶8.

Magistrate Judge, then the warrant was still validly issued -- neither Rule 41 nor the

Fourth Amendment require an administrative application form. Moreover, regardless of

these reasons, the Clerk's Office should accept the search warrant and return of inventory

because the proper time to review the validity of the search warrant is in a pretrial motion

to suppress. Thus, there is no reason for the Clerk's Office not to accept the search

warrant and return of service. It should be ordered to do so.

## Arguments

### 1. The Lack of an Application for a Search Warrant, an Administrative Form, Does not Invalidate the Search Warrant.

First, if the application for search warrant were misplaced, the Clerk's Office

should still accept the search warrant. Cases in the Eleventh and Fifth Circuits have

uniformly held that missing documents from a search warrant do not invalidate a search

warrant. *See, e.g.*, *United States v. Pratt*, 438 F.3d 1264 (11th Cir. 2006) (lost search

warrant after execution did not invalidate warrant); *United States v. Lambert*, 887 F.2d

1568 (11th Cir. 1989) (failure of court's records to contain affidavit supporting an

application for a search warrant did not invalidate warrant); *see also United States v.*

*Lambert*, 421 F.3d 352 (5th Cir. 2005) (warrant was valid even though officers lost

affidavit in support sometime before suppression hearing); *United States v. Russell*, 960

F.2d 421 (5th Cir. 1992) (search warrant valid despite missing attachment that listed and

described items to be seized). Most of these cases deal with the most important

documents relating to a search, like missing affidavits or descriptions of the property to

be searched.

In this case, however, the only document missing is an application for the search warrant -- an administrative form. The other documents that would have been attached to the application, including the agent's affidavit, a photo and description of the property to be searched, and an inventory of items to be seized at the property are all also a part of the search warrant itself.[23] Because the Court's file will contain all of the important documents that the Magistrate Judge reviewed when she signed the warrant, the lack of one administrative piece of paper does not invalidate a properly issued search warrant. Thus, under this first scenario, it is erroneous for the Clerk's Office to refuse to file the attached documents, and the Court should order it to do so.

**2.      An Application Form Is Not a Requirement for the Issuance of a Search Warrant Under Rule 41 or the Fourth Amendment.**

Likewise, even if the application form were never presented to the Magistrate Judge, the warrant still would have been validly issued. Neither Rule 41, nor the Fourth Amendment requires an administrative application form for a search warrant to be issued. The Fourth Amendment requires only "probable cause, supported by . . . affidavit, particularly describing the place to be searched, and the persons or things to be seized." Rule 41 adds additional requirements including:

- That a federal agent or attorney for the Government apply to a Magistrate Judge in the District with authority to issue search warrants;[24]

- That the search warrant be accompanied with an affidavit in support of the warrant or with sworn testimony if sought in person;[25]

---

[23] See Attachment 1.

[24] Fed. R. Crim. P. 41(b)(1).

[25] Fed. R. Crim. P. 41(d)(2)(A).

- That the warrant itself identify the person or property to be searched, along with any person or property to be seized;[26]

- That the warrant designate the magistrate judge to whom the warrant is to be returned;[27]

- That the warrant command that the search be: (1) executed within a specified time, no longer than 10 days, (2) executed during the daytime if appropriate; and (3) returned to the magistrate judge designated in the warrant.[28]

Nowhere, however, does Rule 41 or the Fourth Amendment require an application form. It appears that the Administrative Office of the Courts created the form itself, AO 106 (rev. 8/87), for ease of administrative processing, not to comply with any legal requirement.[29]

Here, at a minimum, the Court would have had in front of it a search warrant form, an affidavit in support of the search warrant, a description the premises to be searched, and a description of the property to be seized. The combination of these documents alone is sufficient to meet all of the requirements of the Fourth Amendment and of Rule 41. No application form is or was necessary. Thus, under this second scenario, it was also erroneous for the Clerk's Office to refuse to file the attached documents, and the Court should order it to do so.

---

[26] Fed. R. Crim. P. 41(e)(2).

[27] *Id.*

[28] Fed. R. Crim. P. 41(e)(2)(A)-(C).

[29] The form may be found at www.uscourts.gov/forms/AO106.pdf.

3.    **The Proper Time to Consider the Validity of a Search Warrant Is in a
Pretrial Motion after Indictment.**

Even if an administrative application form were necessary, which case law and the

Federal Rule clearly do not require, it still is not appropriate for the Clerk's Office to

refuse to file the search warrant and return of inventory.  Rather, as Rule 41(h) indicates,

the proper time to consider the validity of a search warrant is after Indictment during a

Rule 12 pretrial motion to suppress.[30]  Thus, the proper jurisdiction to resolve this matter,

if at all, is by the United States District Court for the Eastern District of California -- the

likely forum for any charges -- not by the Clerk's Office in this District.  The Court

should, therefore, order the Clerk's Office to accept the attached search warrant and return

of inventory for filing.

## Conclusion

The attached search warrant was properly issued and meets all of the legal

requirements, even though it is missing an administrative form.  Given that the substance

of the application is attached to the search warrant itself, the lack of an administrative

form should not prevent its filing.  The Court should order the Clerk's Office to accept

and file the attached documents.

A proposed order is attached.

---

[30] *See* Fed. R. Crim. P. 41(h) ("A defendant may move to suppress evidence in the court where the
trial will occur, as Rule 12 provides.")

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: christopher.a.snyder@usdoj.gov

# *United States District Court*

_____ **MIDDLE** _____ **DISTRICT OF** _____ **ALABAMA** _____

<table>
<tr>
<td>

**In the matter of the Search of**
(Name, address or brief description of person, property or premises to be searched)

930 13th Avenue
Phenix City, AL 36867

</td>
<td>

**SEARCH WARRANT**

CASE NUMBER: 3:06mj 80-SRW

</td>
</tr>
</table>

TO:  **Mario L. Price** _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Mario L. Price _____, who has reason to

                                                          Affiant

believe that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**See Attachment A.**

in the _____ Middle _____ District of _____ Alabama _____ there is now

concealed a certain person or property, namely (describe the person or property)

**See Attachment B.**

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

**See Attachment C.**

YOU ARE HEREBY COMMANDED to search on or before ____ June 22, 2006 ____

                                                                                    Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) ~~(at any time in the day or night as I find reasonable cause has been established)~~ and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to

*the undersigned* _____ as required by law.

U.S. Judge or Magistrate Judge

June 12, 2006 _____ at _____ Montgomery, Alabama _____

Date and Time Issued                                         City and State

Delores R. Boyd, U.S. Magistrate Judge

Name & Title of Judicial Officer                         Signature of Judicial Officer

**"ATTACHMENT A"**

Place to be searched:

930 13th Avenue
Phenix City, AL 36867

A wood framed single story white house with green trim around the windows. The house has two red pillars supporting a covered patio area overhanging the front door to the home. The house is surrounded by a grey metal fence.

A picture of VANESA PLEASANT's home located at 930 13th Avenue, Phenix City, AL is included below:



**Attachment B**

Things to be seized:

1.  Personal checks bearing BRIAN PLEASANT's name for SUNTRUST account number 1000019625424;

2.  Personal checks bearing BRIAN PLEASANT's name for Montgomery County Teachers Federal Credit Union account number 7001685672;

3.  Military identification card(s) bearing BRIAN PLEASANT's name;

4.  Documentation associated with the bank accounts listed in 1 & 2 above, including but not limited to bank statements, withdrawal slips, deposit slips;

5.  Documentation associated with any other bank account that shows that personal checks bearing BRIAN PLEASANT's name were paid to any military installation commissary;

6.  Documentation associated with any military identification card(s);

7.  U.S. currency exceeding $100 in value.

**"ATTACHMENT C"**

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Mario L. Price, depose and state that:

1.    I am a Special Agent with the Air Force Office of
Special Investigations (AFOSI).  I am currently assigned to
AFOSI Detachment (Det) 303, Travis Air Force Base (TAFB),
CA.  Since March 2006, I have been assigned as a Criminal
Investigator working in the AFOSI Det 303 Base
Investigations Branch.

2.    I authored AFOSI Report of Investigation number
303-C-121-A2-31377061092246.  I have not included every fact
known to me about this case but have limited this Affidavit
to those facts relevant to the issuance of a Search Warrant.

3.    On 17 Apr 06 MARK HARRISON, Army Air Force
Exchange Service (AAFES) Loss Prevention (LP) Chief, TAFB,
informed AFOSI Det 303, TAFB, someone identifying
themselves as BRIAN TYRONE PLEASANT, the SUBJECT of this
investigation, cashed 58 personal checks from a closed
Montgomery County Teachers Federal Credit Union (Rockville,
MD) account assigned to BRIAN TYRONE PLEASANT.  Additional
investigation by AAFES LP analysts revealed someone
identifying themselves as BRIAN TYRONE PLEASANT cashed 16
additional personal checks from a closed SunTrust Bank

1

account assigned to BRIAN TYRONE PLEASANT.  BRIAN TYRONE

PLEASANT's name, address and phone number appear on all

questioned checks cashed by BRIAN TYRONE PLEASANT.  The

addresses listed on all checks match residences listed by

BRIAN TYRONE PLEASANT on various paperwork in his Naval

records.  According to BRIAN TYRONE PLEASANT's cellular

provider, the billing address and social security number

associated with the phone number provided by BRIAN TYRONE

PLEASANT on his personal checks match those of BRIAN TYRONE

PLEASANT.  All transactions took place at the TAFB Base

Exchange (BX) between 11 Apr 05 and 1 May 06.  AAFES has

lost $19,475 in cash as a result of these transactions.

    4.    On 24 April 06 I contacted the phone number

listed on all of the returned personal checks cashed by

BRIAN TYRONE PLEASANT at TAFB.  I asked the male who

answered the phone if he was BRIAN TYRONE PLEASANT and he

responded yes.  BRIAN TYRONE PLEASANT declined to meet me

to answer questions concerning fraudulent check cashing

activity associated with his name, address, and phone

number.

    5.    On 1 May 06 someone identifying themselves as

BRIAN TYRONE PLEASANT cashed a personal check at the TAFB

BX branch of Armed Forces Bank in the amount of $300 on a

closed Sun Trust Bank account assigned to BRIAN TYRONE PLEASANT. This is the last time BRIAN TYRONE PLEASANT was known to be in the state of CA, 7 days after I notified him he was under federal criminal investigation.

6.    On 23 May 06 I received a call from HARRISON who informed me BRIAN TYRONE PLEASANT was being employed by AAFES at Fort Gillem, GA. HARRISON informed me 23 May 06 was BRIAN TYRONE PLEASANT's first day of employment with AAFES at Fort Gillem. BRIAN TYRONE PLEASANT was hired by an employment placement agency (NFI) to work at AAFES in a warehouse. SA DONALD BEAUMAN, Special Agent in Charge, Fort McPherson Criminal Investigation Division Resident Agency, Fort McPherson, GA, confirmed BRIAN TYRONE PLEASANT was employed by AAFES at Fort McPherson and present at his place of employment as of 1000 PST on 23 May 06. A photograph acquired during review of BRIAN TYRONE PLEASANT's USN records supports BRIAN TYRONE PLEASANT is the same person currently employed by AAFES at Fort Gillem as indicated by the photograph taken on 23 May 06 by AAFES personnel at Fort Gillem. The social security number provided by BRIAN TYRONE PLEASANT to AAFES personnel at Fort Gillem on 23 May 06 also matches the social security number of BRIAN TYRONE PLEASANT.

3

7. On 19 April 06 I reviewed BRIAN TYRONE PLEASANT's
National Crime Information Center (NCIC) information.
BRIAN TYRONE PLEASANT's NCIC check revealed the following
information:  BRIAN TYRONE PLEASANT was arrested by the
Muscogee County (GA) Sheriff's office for deposit account
fraud/bad checks on 13 June 02.  Further investigation
revealed on 6 Feb 02 BRIAN TYRONE PLEASANT plead "nolo" to
commission of a felony violation of GA statute 16-9-20.C
(deposit account fraud/bad checks).  BRIAN TYRONE PLEASANT
paid a $50 fine and the case was dismissed.  On 3 May 02
BRIAN TYRONE PLEASANT plead "not guilty" to commission of a
felony violation of GA statute 16-9-20.C (deposit account
fraud/bad checks).  BRIAN TYRONE PLEASANT signed a forgery
affidavit and the case was dismissed.  On 14 Jun 02 BRIAN
TYRONE PLEASANT plead "not guilty" to commission of a
felony violation of GA statute 16-9-20.C (deposit account
fraud/bad checks).  The case was dismissed.

8. I conducted a check of BRIAN TYRONE PLEASANT's US
Naval (USN) records.  The name, date of birth, social
security number and residence history of the individual
whose record I reviewed matches those of BRIAN TYRONE
PLEASANT. BRIAN TYRONE PLEASANT enlisted in the USN in
November 2002 through the Atlanta Military Entrance

4

Processing Station at Fort Gillem, GA.  In August 2003 and
again in June 2004 BRIAN TYRONE PLEASANT was awarded non-
judicial punishment for Unauthorized Absence, felony
violations of the Uniform Code of Military Justice.  BRIAN
TYRONE PLEASANT was given a general discharge from the USN
in June of 2004 for "Misconduct - Commission of a Serious
Offense" at the rank of Seaman Apprentice (E-2, a junior
enlisted rank).

     9. On 22 May 06 I conducted a review of the lodging
records of the Westwind Inn, TAFB.  Westwind Inn policy
requires all personnel checking in to their facility to
furnish a valid military identification card.  Someone
identifying themselves as Lieutenant Junior Grade (O-2, a
junior officer rank) BRIAN TYRONE PLEASANT stayed at the
Westwind Inn from 10-12 October 2005.  Someone identifying
themselves as Lieutenant Junior Grade PLEASANT made
reservations on 29 April 06 to stay at the Westwind Inn
from 1-3 May 06.  BRIAN TYRONE PLEASANT did not keep the
scheduled reservation.  There is no indication in BRIAN
TYRONE PLEASANT's Naval records he was ever commissioned as
an officer in the USN.

     10.  On 5 Jun 06 Deputy PATRICK FERGUSON, Columbus, GA
Field Office, United States Marshal Service, went to the

home of VANESA PLEASANT, mother of BRIAN TYRONE PLEASANT, located at 930 13th Street, Phenix City, AL, 36867. FERGUSON asked V. PLEASANT if BRIAN TYRONE PLEASANT was living with her. V. PLEASANT denied BRIAN TYRONE PLEASANT was living with her. FERGUSON informed V. PLEASANT she could be charged with 18 USC 792, Harboring or Concealing Persons, if further investigation revealed BRIAN TYRONE PLEASANT was living with her. V. PLEASANT then confessed BRIAN TYRONE PLEASANT was living with her at 930 13th Street in Phenix City, AL.

11. BRIAN TYRONE PLEASANT was apprehended on 5 Jun 06 by FERGUSON at his mother's home in Phenix City, AL. During the search incident to arrest FERGUSON found BRIAN TYRONE PLEASANT's wallet on his person. The wallet was given back to his mother prior to transporting BRIAN TYRONE PLEASANT to the Muscogee County Jail, Columbus, GA.

12. Over the past four years BRIAN TYRONE PLEASANT has illustrated a propensity to commit violations of federal criminal law. BRIAN TYRONE PLEASANT has made an attempt to evade federal criminal investigators by relocating from CA to GA. BRIAN TYRONE PLEASANT's fraudulent possession of valid military identification (ID) allows him unrestricted access to any US military facility worldwide. There are

6

national security implications surrounding BRIAN TYRONE

PLEASANT's possession of a valid military ID card,

especially considering the fact it bears the rank of a US

military officer.

13.    Based upon my training and experience and the

above-mentioned facts, I believe there exists probable cause

to believe that items relating to bank fraud,

identification documents fraud, and related activity are

present at 930 13th Avenue, Phenix City, Alabama 36867.

MARIO L. PRICE
Special Agent, AFOSI

Subscribed and sworn before me
this _12/12_ day of June, 2006

~~DELORES R. BOYD~~  SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

7

*Case File:31377061092246*

SEARCH WARRANT EXECUTED: **12 June 06**

ITEMS SEIZED FROM: **930 13th Avenue**
 **Phenix City, AL 36867**


One mail letter on white paper, typed, from the Defense Finance and Accounting Service addressed to SUBJECT dated 21 July 05.
Condition: used
Value: unknown
Marked: MLP 12 June 06 on the bottom right corner


One photograph of SUBJECT wearing a brown suit, white shirt and brown and green tie; website www.BTPLEASANTMINISTRIES.COM is listed at the top center of the photograph.
Condition: used
Value: unknown
Marked: MLP 12 June 06


GIANNA F. CARTER
SPECIAL AGENT, AFOSI

*10 July 06*
DATE


SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

*July 10, 2006*
DATE

# *United States District Court*

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

### In the matter of the Search of

(Name, address or brief description of
person, property or premises to be
searched)

CASE NUMBER: _____

      930 13th Avenue
      Phenix City, AL 36867

## Declaration of Christopher A. Snyder

      1.     I am an Assistant United States Attorney for the Middle District of
Alabama. This Declaration is based on my own personal knowledge and a review of
documents in this case. If called upon to testify to these facts, I could do so competently.

      2.     I was scheduled to be the duty attorney for the Middle District for the week
beginning on June 12, 2006. On the afternoon of Friday, June 9, 2006, I received a
telephone call from Assistant United States Attorney Samantha Spangler from the United
States Attorney's Office for the Eastern District of California. Spangler requested my
assistance for the following Monday with a search warrant application for a residence in
the Middle District in connection with an ongoing investigation in California.

      3.     Spangler described to me the particulars of the investigation. She
additionally noted that Air Force OSI Special Agent Mario Price would be arriving in
Montgomery, Alabama, the following Monday to assist me with the search warrant
application process. I spoke with Price on June 9, 2006, and scheduled a time to meet
with him the following Monday.

      4.     At around 9:00 a.m. on the morning of June 12, 2006, I met with Price and
another Special Agent from Maxwell Air Force Base, Gianna Carter. We reviewed a
series of documents that Price had prepared, including his affidavit, a photo and
description of the property to be searched, and an inventory of items to be seized at the
property.

5.      I then prepared and printed out an search warrant application form and a general search warrant form. After having the agents review the forms, I called the duty Magistrate Judge, Judge Deloris Boyd, to schedule a time to have her consider the search warrant application and afterwards faxed ten pages of materials to her chambers. Shortly thereafter, however, I received a call from Judge Susan Russ Walker's chambers, which informed me that Judge Boyd would be in court for the morning, but that Judge Walker had agreed to review the application.

6.      I, along with Price and Carter, then met with Judge Walker who reviewed, at a minimum, the search warrant, which had attached Price's affidavit, a photo and description of the property to be searched, and an inventory of items to be seized at the property. After reviewing the documents and swearing Price to the contents of the affidavit, I observed Judge Walker and Price signed the documents.

7.      Price, Carter, and I then left the Judge's chambers. I instructed the agents on how to file the paperwork with the Clerk's and Marshal's Offices.

8.      Sometime in July I received a call from Carter, who informed me that the Clerk's office would not accept the search warrant and return of inventory for filing, because there was no application for search warrant. I then reviewed my desk files from this case. While I do not have an exact copy of the signed materials, which I had previously given to the agents in this case, I do possess a rough draft of the application for search warrant form that I prepared on June 12, 2006.

9.      I declare under penalty of perjury that the foregoing statements are true and correct. See 28 U.S.C. §1746.

Executed on August 7, 2006

CHRISTOPHER A. SNYDER

# *United States District Court*

_____ MIDDLE _____ DISTRICT OF _____ ALABAMA _____

### In the matter of the Search of

(Name, address or brief description of
person, property or premises to be
searched)

CASE NUMBER: _____

      930 13th Avenue
      Phenix City, AL 36867

## Declaration of Mario Price

    1.     I am a Special Agent with the United States Air Force Office of Special Investigations, and I am the lead case agent for the investigation of Brian Pleasant. I am currently stationed at Travis Air Force Base, which is located within the Eastern District of California. This Declaration is based on my own personal knowledge and a review of documents in this case.

    2.     Pleasant is being investigated for, among other things, bank fraud. On June 5, 2006, the United States Marshals apprehended Pleasant at his mother's home in Phenix City, Alabama. During the search incident to arrest the Marshals found Pleasant's wallet on his person. The wallet was given back to his mother prior to transporting Pleasant to the Muscogee County Jail, Columbus, Georgia.

    3.     In order to seize the wallet and other items relating to the bank fraud, I spoke with Samatha Spangler of the U.S. Attorney's Office for the Eastern District of California and with Christopher Snyder of the U.S. Attorney's Office for the Middle District of Alabama. We spoke about applying for search warrant for 930 13th Avenue, Phenix City, Alabama 36867, which is the house of Pleasant's mother.

    4.     On the morning of June 12, 2006, another Special Agent from Maxwell Air Force Base, Gianna Carter, and I met with Snyder. We reviewed a series of documents that I had prepared, including my affidavit in support of the search, a photo I had taken of the property to be searched, a description of the property to be searched, and an inventory of items to be seized at the property. Snyder also prepared and printed some additional documents.

5.    After Snyder made some phone calls, the three of us met with Magistrate Judge Susan Russ Walker, who reviewed the materials presented to her. After reviewing the documents and swearing me to the contents of the affidavit, Judge Walker and I signed the documents.

6.    After leaving the Judge's chambers, I placed the materials that the Judge and I signed into a folder, which I kept with me at all times. I later executed the search warrant, leaving a copy of the warrant for the occupant of the residence.

7.    I then prepared a return of inventory form containing the contents of the search, which I provided to Carter. I also gave her copies of the documents that Judge Walker and I signed. I kept the original of these materials myself. These are the only materials I have ever possessed in relation to this search warrant.

8.    Later, when I found out that an application for was missing, I went through my materials. I do not have, nor do I remember seeing an application form.

9.    I declare under penalty of perjury that the foregoing statements are true and correct. See 28 U.S.C. §1746.

Executed on August 7, 2006

MARIO PRICE

# *United States District Court*

_____ **MIDDLE** _____ **DISTRICT OF** _____ **ALABAMA** _____

### In the matter of the Search of

(Name, address or brief description of
person, property or premises to be
searched)

**CASE NUMBER:** _____

      930 13th Avenue
      Phenix City, AL 36867

## Declaration of Gianna Carter

1.     I am a Special Agent with the United States Air Force Office of Special
Investigations. I am currently stationed at Maxwell Air Force Base, which is located
within the Middle District of Alabama. This Declaration is based on my own personal
knowledge and a review of documents in this case.

2.     On or about June 9, 2006, OSI Agent Mario Price contacted me regarding
assisting him with the investigation of Brian Pleasant and the search of the house
belonging to Pleasant's mother.

3.     On the morning of June 12, 2006, Price and I met with Assistant United
States Attorney Christopher Snyder. We reviewed a series of documents that Price had
prepared, including his affidavit in support of the search, a photo he had taken of the
property to be searched, a description of the property to be searched, and an inventory of
items to be seized at the property. We also reviewed several documents that Snyder
prepared and printed.

4.     After Snyder made some phone calls, the three of us met with Magistrate
Judge Susan Russ Walker, who reviewed the materials presented to her. After reviewing
the documents and swearing Price to the contents of the affidavit, Judge Walker and Price
signed the documents.

5.     After Price executed the search warrant, he then gave me a hand written
copy of the return of inventory and a copy of search warrant materials. I typed up the
return of inventory and then took it to Judge Walker's chambers for her signature on July

10, 2006. These are the only materials I have ever possessed in relation to this search warrant.

6.      Later on July 10, 2006, I then took the materials that Price had given me and the signed return of inventory to the Clerk's Office for the Middle District of Alabama. I was informed, however, that the Clerk's Office would not accept the search warrant because I did not have the application form for the search warrant. I do not have, nor do I remember seeing an application form.

7.      I declare under penalty of perjury that the foregoing statements are true and correct. See 28 U.S.C. §1746.

Executed on August 7, 2006

GIANNA CARTER